# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ARIEL BARKER ON BEHALF OF            CIVIL ACTION
HANNAH CLAIRE BARKER AND
AVA ANTHONY BARKER

VERSUS                                NO. 17-340-SDD-RLB

THE CITY OF PLAQUEMINE, MAYOR
EDWIN M. REEVES, JR., ET AL.

## RULING

This matter is before the Court on the *Motion to Dismiss Second Supplemental and Amended Complaint*[1] by Defendants, City of Plaquemine and Kenny Payne, Chief of Plaquemine Police ("Chief Payne" or collectively "municipal Defendants").  Chief Payne has been sued in his individual and official capacities.  Plaintiff, Ariel Barker on behalf of Hannah Claire Barker and Ava Anthony Barker ("Plaintiff") has filed a *Reply* in opposition[2] to the municipal Defendants' motion, to which Defendants filed a *Reply*.[3] For the reasons set forth below, Defendants' motion shall be granted.

Also before the Court is the *Motion to Dismiss Second Supplemental and Amended Complaint*[4] by Defendants, James Breaux ("Breaux"), Demetre Jackson ("Jackson"), Victor Hebert ("Hebert"), Travis Roberts ("Roberts")(or collectively, "the

---

[1] Rec. Doc. No. 39.
[2] Rec. Doc. No. 42.
[3] Rec. Doc. No. 48.
[4] Rec. Doc. No. 40.
56952

officers"), all of whom have been sued in their individual and official capacities.  Plaintiff has filed an *Opposition*[5] to the officers' motion, to which the officers filed a *Reply*.[6]

## I.    FACTUAL BACKGROUND[7]

Plaintiff filed this lawsuit on May 31, 2017 asserting claims under 42 U.S.C. § 1983 and Louisiana law.[8]  Plaintiff is the biological mother of Hannah Claire Barker and Ava Anthony Barker, both minor children and surviving descendants of their deceased father, David Anthony Ourso, Jr. ("Ourso").  Plaintiff's claims arise from an altercation involving Ourso and officer Defendants on the night of June 1, 2016.[9]  Plaintiff claims that the Defendants violated Ourso's rights secured by the Civil Rights Acts, 42 U.S.C. Section 1983, and the rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of Louisiana.

Specifically, Plaintiff alleges that Plaquemine Police officers Breaux, Roberts, and Jackson were dispatched to investigate a called-in complaint on June 1, 2016.[10]  Plaintiff further alleges that the officers located the individual described in the call, who was later identified as Ourso.[11]  Based on Plaintiff's observation of the officers' body camera videos obtained from the night in question, Plaintiff claims that Ourso complied with the officers' commands of "don't move" and "put your hands up," and Ourso fell to his knees and raised both hands.[12] Further, Plaintiff alleges that Ourso's behavior was erratic and that

---

[5] Rec. Doc. No. 41.
[6] Rec. Doc. No. 48.
[7] The facts are drawn from the *Second Supplemental and Amended Complaint* (Rec. Doc. 37) and the Parties' memoranda.
[8] Rec. Doc. No. 1.
[9] Rec. Doc. No. 37.
[10] *Id.* at ¶ 19.
[11] *Id.* at ¶ 20.
[12] *Id.* at ¶ 21.

56952

it was obvious that he was suffering from a mental episode or was under the influence of drugs and/or alcohol during the incident.[13]   Plaintiff claims that, without warning or provocation, Hebert grabbed Ourso and slammed him to the ground.[14]  Plaintiff alleges that Ourso was fully cooperating with the officers, the officers had full control of the scene, and Ourso posed no threat to their safety.[15]  Despite his cooperation, Plaintiff claims that Hebert, Roberts, and Jackson all placed their weight on Ourso's back, Roberts advised Ourso to stop struggling, Hebert got handcuffs on Ourso's left wrist, and Roberts pinned Ourso to the ground.[16]

Next, Plaintiff alleges that Breaux, Roberts, Jackson, and Hebert utilized the "prone restraint maneuver" to restrain Ourso, holding him down by his arms and legs, and one officer stepped on his hand.[17]  Although Ourso allegedly complained that he could not breathe, Plaintiff alleges Roberts kept his full body weight pressed onto Ourso, which Plaintiff contends demonstrated the officers' deliberate indifference to binding jurisprudence.[18]   Plaintiff claims that, although the officers understood the urgency of Ourso's medical needs, the officers ignored his pleas and rather "intended him harm in the form of urging his arm to be broken."[19]  Finally, Plaintiff claims that none of the officers rendered care in response to Ourso's obvious need for medical care, and, as Ourso allegedly begged for help to breathe, they told Ourso "you can breathe when you calm down."[20]   Plaintiff contends that Ourso's body soon "went lifeless," yet the officers

---

[13] *Id.*
[14] *Id.* at ¶ 22.
[15] *Id.*
[16] *Id.*
[17] *Id.* at ¶ 23.
[18] *Id.* (citing *Simpson v. Hines*, 903 F.2d 400 (5th Cir. 1990)).
[19] *Id.* at ¶ 24.
[20] *Id.* at ¶ 25.
56952

continued to bear down on him with their full weight.[21]

Ourso ultimately died following this encounter, and his death was ruled by the coroner to be a homicide.[22] Plaintiff maintains that the body camera videos worn by the officers belie their subsequent police reports which contain justifications for their conduct, *i.e.*, that Ourso was resisting them such that their use of force was necessary.[23] Plaintiff claims that Chief Payne subsequently ratified an approved the police reports written by these officers, knowing that the reports conflicted with what was revealed on the body cameras, thus resulting in a "cover up" of the homicide allegedly committed by the officers.[24]

## II.   PROCEDURAL BACKGROUND

On September 5, 2017, the City of Plaquemine and Chief Payne filed a *Motion to Dismiss* pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted wherein Chief Payne asserted the defense of qualified immunity.[25]   On September 5, 2017, Defendants Breaux, Jackson, Hebert, and Roberts also filed a *Motion to Dismiss* pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted wherein they asserted the defense of qualified immunity.[26] Plaintiff subsequently filed a *First Supplement and Amended Complaint*,[27] a *Memorandum in Opposition to Defendant's Motion To Dismiss*,[28] and a *Motion to Dismiss Defendant's 12(b)6 Motion for Failure to State a Claim/ and or alternatively Plaintiff's Motion for Leave of Court to File*

---

[21] *Id.* at ¶ 26.
[22] *Id.* at ¶ 27.
[23] *Id.*
[24] *Id.* at ¶ 28.
[25] Rec. Doc. No. 12.
[26] Rec. Doc. No. 13.
[27] Rec. Doc. No. 19.
[28] Rec. Doc. No. 20.
56952

*Amended Claim.*[29]

In response to Plaintiff's *First Supplement and Amended Complaint*, Chief Payne and the officers filed new *Motions to Dismiss* essentially seeking the same relief.[30] While these motions were pending, Plaintiff again sought leave to amend her *Complaint*, which the Court granted, and Plaintiff's *Second Supplemental and Amended Complaint*[31] was filed on August 13, 2018. Because Defendants subsequently filed *Motions to Dismiss* on Plaintiff's most recent amendment, the Court denied as moot all previously pending *Motions to Dismiss*.[32] The Court now turns to the most recent *Motions to Dismiss* filed by the municipal Defendants and the officers.

## III. LAW AND ANALYSIS

### A. Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[33] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[34] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[35] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6)

---

[29] Rec. Doc. No. 21.
[30] Rec. Doc. Nos. 32 & 33.
[31] Rec. Doc. No. 37.
[32] Rec. Doc. No. 49.
[33] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[34] *Randall D. Wolcott, M.D., P.A. v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011).
[35] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
56952

motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[36] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[37] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[38] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[39] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[40] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[41]

### B. Federal Claims under 42 U.S.C. § 1983

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[42] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any

---

[36] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).

[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").

[38] *Twombly*, 550 U.S. at 570.

[39] *Iqbal*, 556 U.S. at 678.

[40] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[41] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

[42] *See Migra v. Warren City School District Board of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).

56952

citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....[43]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred elsewhere.'"[44]

To prevail on a Section 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[45] A Section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[46]

## C. Chief Payne and the City of Plaquemine

Although Plaintiff asserted Section 1983 official capacity claims against Chief Payne and the City of Plaquemine for policies of deficient supervision and/or training, in her *Opposition* to the municipal Defendants' *Motion to Dismiss*, Plaintiff argues only her ratification claim. As Plaintiff failed to address any policy claims other than ratification in her *Opposition*, Plaintiff's supervision and training claims are deemed abandoned and are dismissed as a matter of law.[47]

---

[43] 42 U.S.C. § 1983.

[44] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta, TX*, 73 F.3d 60, 63 (5th Cir.), *cert. denied*, 519 U.S. 818 (1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir.1985).

[45] *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir.1984).

[46] *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908 (1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir.1986).

[47] *See U.S. ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375 at *7 (S.D. Miss. Mar. 30, 2013)("The Relators did not adequately brief their opposition to the Defendant's Motion to Dismiss Count Three on state law claims of fraud, suppression, and deceit. As such, they have abandoned Count Three. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (concluding that plaintiff's failure to defend her "retaliatory abandonment" claim in response to the defendant's motion to dismiss constituted 56952

The Supreme Court has held that, when an authorized policymaker approves a subordinate's decision and the basis for it, such ratification is chargeable to the government entity.[48] The Fifth Circuit, however, has limited the theory of ratification to "extreme factual situations."[49] "Good faith statements made in defending complaints against municipal employees do not demonstrate ratification."[50] Accordingly, "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality."[51] Moreover, the Fifth Circuit has held that "[i]t is nearly impossible to impute lax disciplinary policy to [a governmental entity] without showing a pattern of abuses that transcends the error made in a single case."[52]

Plaintiff alleges the following about ratification:

10. Defendant, KENNY PAYNE, (hereinafter "Payne") is the Chief of Police for The City of Plaquemine at the Plaquemine Police Department, the employer of the defendant officers herein. Payne enjoys ultimate supervisory, regulatory, and corrective authority over each and every law enforcement officer herein, and bears ultimate personal and vicarious liability for the negligent conduct of the same. Further, Defendant, Payne, has ultimate policy making authority with respect to the conduct and procedures of the Plaquemine Police Department. Plaintiff sues Payne in his individual and official capacity concerning the actions leading to David Anthony Ourso, Jr.'s death and for the initial cover up of those illegal acts.

\* \* \*

---

abandonment of the claim); *Dean v. One Life Am., Inc.*, No. 4:11–CV–203–CWR–LRA, 2013 WL 870352, at *2 (S.D.Miss. Mar. 7, 2013) (holding that by failing to address the defendant's argument in her response, the plaintiff abandoned her claim); *Alexander v. Brookhaven Sch. Dis*t., No. 3:07–CV–640–DPJ–JCS, 2009 WL 224902, at *4 (S.D.Miss. Jan. 28, 2009) (stating that the plaintiff "appears to have abandoned [her Equal Pay Act] claim having not defended it" in her response to the defendant's motion to dismiss), *aff'd*, 428 F. App'x 303 (5th Cir. 2011)).

[48] *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

[49] *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 298 (5th Cir. 1998)).

[50] *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010).

[51] *Peterson*, 588 F.3d at 848.

[52] *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001) and affirming the district court's dismissal of the plaintiff's excessive force claim against a police department).

56952

28. Later the officers wrote reports that were in direct conflict to what actually occurred on the 3 body cameras. These reports were ratified and approved by CHIEF KENNY PAYNE, in his official capacity as the CHIEF OF POLICE for the City of Plaquemine. PAYNE deliberately allowed these officers to submit false police reports to cover up the homicide that they committed against OURSO.[53]

1. Chief Payne - Official Capacity Claims

Chief Payne moves to dismiss the Section 1983 claims brought against him in his official capacity. A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent.[54] Accordingly, the claims against the Chief in his official capacity are, in effect, claims against the municipal entity he represents, the City of Plaquemine Police Department.[55] A plaintiff asserting a Section 1983 claim against a municipal official in his official capacity or a Section 1983 claim against a municipality "must show that the municipality has a policy or custom that caused his injury."[56] To establish an "official policy," a plaintiff must allege either of the following:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policymaking authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such

---

[53] Rec. Doc. No. 37 at ¶¶ 10, 28.
[54] *Monell v. New York City Dep't of Soc. Serv, of City of New York*, 436 U.S. 658, 691 n. 55 (1978).
[55] *Graham,* 473 U.S. at 165; *see also Bellard v. Gautreaux*, No. CIV.A. 08-627, 2010 WL 3523051, at *4 (M.D. La. Sept. 3, 2010) amended in part, No. CIV.A. 08-627, 2010 WL 4977480 (M.D. La. Dec. 2, 2010), *affirmed*, 675 F.3d 454 (5th Cir. 2012) *and affirmed*, 675 F.3d 454 (5th Cir. 2012).
[56] *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007).
56952

custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.[57]

Although "a single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity,"[58] absent an official policy, actions of officers or employees of a municipality do not render the municipality liable under Section 1983.[59] A municipality cannot be held liable under Section 1983 for the tortious behavior of its employees under a theory of *respondeat superior.*[60] "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."[61]

The municipal Defendants move to dismiss Plaintiff's *Monell* claims, arguing that she has failed to identify a single policy or practice of the police department that caused the alleged injuries, and Plaintiff has not specified what these policies and practices are. Defendants argue that Plaintiff has made only allegations of an isolated incident and has alleged no facts to demonstrate a pattern of similar violations. The municipal Defendants maintain that Plaintiff's ratification claim is based on vague and conclusory allegations insufficient to rise to the legal definition of "ratification" or "endorsement."[62]

Plaintiff opposes the motion by the municipal Defendants, arguing that she has pled that the police reports do not accurately reflect what occurred on the body cameras of the officers involved in the incident, and she claims that caselaw supports her claim of

---

[57] *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984).
[58] *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir.1996) (internal quotations and citations omitted) (emphasis in original).
[59] *Id.*
[60] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
[61] *Id.*
[62] Rec. Doc. No. 39-1, p. 13, n. 73.
56952

ratification. However, for purposes of *Monell* liability, Plaintiff has failed to plead a policy or custom of ratification and has failed to argue in her *Opposition* that a policy or custom of ratification existed within the Plaquemine Police Department. Plaintiff merely states: "the only action that Payne took in the instance case was to overlook what the body cam video shows."[63]

In *Cambre v. Smith*,[64] the district court for the Eastern District of Louisiana addressed a case with similar facts wherein the plaintiff suffered injuries after an altercation with police officers in St. Tammany Parish. Among other claims, the plaintiff asserted a ratification claim against the sheriff in both his official and individual capacities for his alleged ratification of his officers' allegedly unconstitutional conduct.[65] The plaintiff pled that the St. Tammany Parish Sheriff's Office "has a *de facto* policy of using its internal affairs division to cover up bad policing practices in lieu of addressing deficiencies within the organization."[66] The plaintiff argued that "the investigation into the injury-causing incident was actually 'a cover-up,' in part because no 'struggle' occurred as part of the alleged January 2018 incident," and he also argued that the press release issued by the department was false.[67] The plaintiff maintained that, because the sheriff concluded that his officers followed proper protocol, the sheriff ratified the subordinate officers' decisions and the bases for such decisions, which warranted imposing liability on the sheriff in his official capacity.[68]

---

[63] Rec. Doc. No. 42, p. 3.
[64] No. 18-6509, 2018 WL 6510897 (E.D. La. Dec. 10, 2018).
[65] *Id.*
[66] *Id.* at *2. Conversely, the Plaintiff herein did not plead any ratification policy on the part of the municipal Defendants.
[67] *Id.* at *7.
[68] *Id.*
56952

The court dismissed the plaintiff's official capacity ratification claim against the sheriff, stating: "Cambre's bald accusation that the investigation was a 'cover-up' is not enough. The amended complaint includes no facts suggesting that Smith knew about the circumstances surrounding the January 2018 incident, as Cambre alleges them, let alone that he ratified the STPSO officers' conduct on that date and their grounds for engaging in such conduct."[69] The court also rejected the plaintiff's ratification claims because the plaintiff failed to allege a pattern of complaints by other citizens, as required by Fifth Circuit jurisprudence,[70] and stated: "Thus, Cambre's theory of ratification cannot establish an official policy or custom, and his claim against Smith in his official capacity must be dismissed."[71]

Here, after three attempts, Plaintiff has made only vague, conclusory assertions that Chief Payne and the City of Plaquemine engaged in a cover-up, failed to discipline the officers, and ratified or endorsed the officers' allegedly unconstitutional behavior. There is no allegation that a policy or pattern of ratifying or endorsing similar conduct existed within the department, and there are no facts alleged to support a policy or pattern of ratification. Accordingly, the Section 1983 ratification claim brought against Chief Payne in his official capacity is dismissed with prejudice.

---

[69] *Id.* (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009)(holding that a police chief was not liable for his subordinate officers' alleged use of excessive force under a theory of ratification despite the plaintiff's contention that the police chief investigated the officers' conduct and determined that it complied with departmental policies).
[70] *Id.* (citing *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001) and affirming the district court's dismissal of the plaintiff's excessive force claim against a police department)).
[71] *Id.*
56952

2. <u>Chief Payne - Individual Capacity Claims</u>

Based on the same allegations set forth above, Plaintiff also brings a ratification claim against Chief Payne in his individual capacity. Chief Payne moves to dismiss this claim, arguing that Plaintiff has failed to state a plausible claim against him, and he is entitled to qualified immunity.

The Fifth Circuit has held that, in a claim asserted under Section 1983, "[a] plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation."[72] A governmental official cannot be held liable under Section 1983 on the basis of *respondeat superior.*[73]

Here, Plaintiff alleges that Chief Payne personally engaged in a "cover-up," failed to discipline the officers, and ratified or endorsed the allegedly false police reports documenting the incident. The same jurisprudence set forth above demonstrates that Plaintiff has failed to plead factual support for these conclusory allegations; moreover, it has been held as a matter of law that the failure to discipline does not rise to the level of ratification or endorsement. In *Hoffpauir v. Columbia Casualty Co.*, this Court held that the failure of a sheriff to discipline an officer for allegedly unconstitutional conduct, without more, does not constitute ratification or endorsement of the officer's behavior.[74] Because Plaintiff has failed to plead an individual capacity claim against Chief Payne for ratification, the Court need not address the defense of qualified immunity. Chief Payne's motion to

---

[72] *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999)).
[73] *Monell v. Dep.t of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978).
[74] 2013 WL 5934699 at *9 (M.D. La. Nov. 5, 2013)(citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278–79 (5th Cir.1992)).
56952

dismiss the Section 1983 ratification claim against him is GRANTED, and this claim is dismissed with prejudice.

      3.  <u>State Law Claims</u>

Plaintiff asserted several Louisiana constitutional and state law claims against Chief Payne and the City of Plaquemine.    Plaintiff utterly failed to mention any of the state law claims in her *Opposition* memoranda.   Accordingly, the state law claims are deemed abandoned;[75] the municipal Defendants' *Motion to Dismiss* is granted on all state law claims; and the state law claims asserted against the municipal Defendants are dismissed with prejudice.

## D.  Claims Asserted against the Officers

Plaintiff asserts the following claims pursuant to Section 1983 against the officers: false arrest, false imprisonment, battery, assault, and kidnapping.   Plaintiff asserts the following state law claims against the officers:  assault, negligence, intentional infliction of emotional distress, false arrest, false imprisonment without consent, kidnapping, wrongful death, and unspecified "[v]iolation of rights otherwise guaranteed by [sic] under state and federal law."[76]

---

[75] *See U.S. ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375 at *7 (S.D. Miss. Mar. 30, 2013)("The Relators did not adequately brief their opposition to the Defendant's Motion to Dismiss Count Three on state law claims of fraud, suppression, and deceit. As such, they have abandoned Count Three. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (concluding that plaintiff's failure to defend her "retaliatory abandonment" claim in response to the defendant's motion to dismiss constituted abandonment of the claim); *Dean v. One Life Am., Inc.*, No. 4:11–CV–203–CWR–LRA, 2013 WL 870352, at *2 (S.D.Miss. Mar. 7, 2013) (holding that by failing to address the defendant's argument in her response, the plaintiff abandoned her claim); *Alexander v. Brookhaven Sch. Dis*t., No. 3:07–CV–640–DPJ–JCS, 2009 WL 224902, at *4 (S.D.Miss. Jan. 28, 2009) (stating that the plaintiff "appears to have abandoned [her Equal Pay Act] claim having not defended it" in her response to the defendant's motion to dismiss), *aff'd*, 428 F. App'x 303 (5th Cir. 2011)).

[76] Rec. Doc. No. 37, p. 10.

56952

1.  <u>Section 1983 Official Capacity Claims Against the Officers</u>

Although Plaintiff sued the officers in their official capacities, Plaintiff has not alleged that any of these officers are policymakers for the City of Plaquemine or the Plaquemine Police Department or that they have been delegated with final policymaking authority. Moreover, Plaintiff has sued Chief Payne as the policymaker for the municipality. Accordingly, all Section 1983 official capacity claims against the officers are dismissed with prejudice as amendment is futile.[77]

2.  <u>Section 1983 Individual Capacity Claims Against the Officers</u>

Plaintiff alleges that the officers' false arrest, false imprisonment, battery, assault, and kidnapping of Ourso violated his Fourth, Fifth, and Fourteenth Amendment rights. Although Plaintiff did not invoke the Eighth Amendment, she did allege that "[t]he force that the officers used in the detention and seizure of OURSO[']s person was excessive and not justified[78] and that they ignored Ourso's "obvious need for medical care."[79]

Notwithstanding the assertion of these claims, Plaintiff only addressed her Fourth and Fourteenth Amendment claims in the context of false arrest and false imprisonment, and she references Ourso's loss of life without due process under the Fourteenth Amendment. Thus, Plaintiff abandoned any Fifth Amendment claims[80] and any other

---

[77] *See Elphage v. Gautreaux*, 969 F.Supp.2d 493, 512 (M.D. La. 2013)(citing *Club Retro, L.L.C. v. Hilton*, No. 07–193, 2008 WL 1901723, at *7 (W.D. La. Apr. 4, 2008), *rev'd in part on other grounds*, 568 F.3d 181 (5th Cir.2009)).

[78] Rec. Doc. No. 37 at ¶ 30.

[79] *Id.* at ¶ 25.

[80] Plaintiff merely concludes that "Defendants herein have deprived [Ourso] of his rights … guaranteed by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution." Rec. Doc. No. 37 at ¶ 30. However, as Defendants correctly point out, "the Fifth Amendment applies only to actions of the federal government, and not to the actions of a municipal government." *Morin v Caire*, 77 F.3d 116, 120 (5th Cir. 1996) (citing *Richard v. Hinson*, 70 F.3d 415, 416 (5th Cir. 1995)). Plaintiff has not alleged that the Defendant officers were federal employees "acting under authority of the federal government" at the time of Ourso's arrest. *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). To the contrary, Plaintiff 56952

claims ostensibly asserted under the Fourth and Fourteenth Amendments. As to Plaintiff's Equal Protection claim under the Fourteenth Amendment, Plaintiff makes no mention of this claim in her *Opposition*, and her *Second Supplemental and Amended Complaint* is devoid of factual allegations that would demonstrate the elements of this claim.[81] Therefore, Plaintiff's Equal Protection claim is dismissed with prejudice.

The officers concede that they have not moved for dismissal on Plaintiff's Eighth, Fourth, or Fourteenth Amendment excessive force claims. As these claim are not subject to dismissal on this motion, the Court need not address such claims. However, to the extent Plaintiff asserted an Eighth Amendment claim of medical deliberate indifference, the elements of this claim are not addressed or argued at all in Plaintiff's *Opposition* and are, therefore, deemed abandoned. For the unabandoned claims that are subject to dismissal pursuant to the officers' motion, the officers have asserted the affirmative defense of qualified immunity.

3. Qualified Immunity

In *Harlow v. Fitzgerald*, the United States Supreme Court established the principle that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[82]

---

alleges that all Defendant officers were each "acting in his capacity as agent, servant, and employee of the Plaquemine police Department, and within the scope of his employment as such." Rec. Doc. No. 37 at ¶¶ 11-14. Therefore, Plaintiff's Fifth Amendment claim would also fail as a matter of law.

[81] To state a claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff first must allege "that two or more classifications of similarly situated persons were treated differently" by a state actor. *Gallegos–Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012). No such facts are alleged in this matter or addressed in Plaintiff's *Opposition*.

[82] 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

56952

"When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."[83]

A claim of qualified immunity requires the Court to engage in the well-established two-step analysis developed by the Supreme Court in *Saucier v. Katz*.[84] As stated by the Fifth Circuit in the context of a motion for summary judgment:

> First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights. *See, e.g., Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005); *McClendon v. City of Columbia*, 305 F.3d 314, 322–23 (5th Cir.2002) (*en banc*); *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). If not, our analysis ends. If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *See, e.g., Tarver*, 410 F.3d at 750; *Glenn*, 242 F.3d at 312. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions. *See Glenn*, 242 F.3d at 312; *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *see also Tarver*, 410 F.3d at 750 ("If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.").[85]

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness'."[86] The plaintiff must support her claim with "sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts."[87]

---

[83] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*)).

[84] 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). *See Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).

[85] *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007).

[86] *McClendon*, 305 F.3d at 323 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)).

[87] *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir.1995) (*en banc*).

56952

4. <u>Fourth Amendment Claims of False Arrest/Imprisonment</u>

Plaintiff's allegations specifically relating to the false arrest/imprisonment claims are as follows:

> 20. … OURSO was not committing any crimes when the officers saw him. He was under the influence of drugs and was begging and pleading for help from anyone who could help him. It was immediately apparent to anyone that he was dazed and confused.
>
> 21. Upon locating OURSO, who was shirtless and pant-less at the time, officers gave him two commands. OURSO was told, "don't move" and "put your hands up." OURSO complied with both commands and fell to his knees and raised his hands. OURSO at this time was asking the officers for help. It was apparent from OURSO'S erratic behavior that he was either having a mental episode or under the influence of drugs and/or alcohol. However, it also immediately apparently that he was not armed because he was semi-nude and had his hands where the officers could see him.[88]

Plaintiff also alleges that Ourso was handcuffed.[89]

In moving to dismiss these claims, the officers contend that Plaintiff has alleged insufficient facts to support the claim that Ourso was arrested/restrained without probable cause.  The officers note that Plaintiff does not allege that Ourso was actually arrested. The officers claim Plaintiff has made only conclusory allegations without a factual predicate for her belief that the officers were without probable cause to restrain or arrest Ourso.  The officers contend Plaintiff failed to plead any facts regarding Ourso's own conduct or any other facts regarding the circumstances surrounding Ourso's detention. And certainly, the officers argue, Plaintiff has not pled sufficient facts that the officers' knowledge at the time was insufficient for the reasonable belief that Ourso had committed a criminal offense.   The officers note that, under applicable law, even if an officer

---

[88] Rec. Doc. No. 37 at ¶¶ 20-21.
[89] *Id.* at ¶ 22.
56952

reasonably but mistakenly concluded that probable cause was present, the officer is entitled to qualified immunity.

The Court disagrees that Plaintiff failed to allege sufficient facts to suggest the officers may have lacked probable cause to restrain/arrest Ourso. Indeed, Plaintiff did plead facts regarding Ourso's conduct, as quoted above, which the Court must accept as true for purposes of this motion. However, the allegations in Plaintiff's *Second Supplemental and Amended Complaint* and her arguments in opposition to this motion fail to overcome the officers' assertion of qualified immunity as to the false arrest/false imprisonment claims. Indeed, Plaintiff's arguments in her *Opposition* focus primarily on the excessive force claim rather than the officers' alleged lack of probable cause to arrest/restrain Ourso, and these are connected, but separate, issues. Whether the officers reasonably believed they had probable cause to arrest and/or restrain Ourso is a different question than whether the manner in which the officers restrained Ourso was excessive under the circumstances.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment [when] there is probable cause to believe that a criminal offense has been or is being committed."[90] "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."[91] Indeed, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his [or her] presence, he [or she] may, without violating the Fourth Amendment, arrest the offender."[92]

---

[90] *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004).
[91] *Id.*
[92] *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001).
56952

The critical question when deciding whether qualified immunity protects an officer from false arrest/false imprisonment claims is whether "a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the officer possessed."[93] The Fifth Circuit has characterized this standard as "arguable" probable cause.[94] Even officers who are reasonably mistaken about the existence of probable cause are entitled to qualified immunity.[95]

While Plaintiff alleges Ourso was not committing any crime at the time the officers arrived on the scene, and that the officers responded to a call that Ourso needed help, Plaintiff does not provide a factual basis for how she knows this. Plaintiff does not allege how she is aware of the facts reported in the initial complaint regarding Ourso's behavior. Further, Plaintiff's own allegations acknowledge that Ourso was "shirtless and pant-less" and under the influence of drugs or alcohol when the officers came upon the scene,[96] and Ourso had allegedly been "moving around the neighborhood hollering and screaming for help."[97] It is unclear from Plaintiff's allegations whether Ourso was wearing underwear or he was nude during this incident. In any event, although Plaintiff makes the conclusory statement that "Ourso was not committing any crimes when the officers saw him," it is

---

[93] *Babb v. Dorman*, 33 F.3d 472, 477 (1994) (internal alterations and quotation marks omitted) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

[94] *Id.* (quoting *Gorra v. Hanson*, 880 F.2d 95, 97 (8th Cir.1989)); *see also Brown v. Lyford*, 243 F.3d at 190 (quoting *Hart v. O'Brien*, 127 F.3d 424, 444 (5th Cir.1997) *abrogated on another issue by Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)) (stating that, in order for an officer to lose qualified immunity, "there must not even 'arguably' be probable cause for the ... arrest").

[95] *Babb*, 33 F.3d at 477 (quoting *Hunter*, 502 U.S. at 227, 112 S.Ct. 534).

[96] Rec. Doc. No. 37 at ¶ 21.

[97] *Id.* at ¶ 22.

56952

possible that Ourso was disturbing the peace, engaged in public intoxication, and perhaps indecent exposure considering his lack of clothing in public.[98]

Likewise, Plaintiff has not pled factual basis for her knowledge of the officers' state of mind and interpretation of Ourso's behavior as they approached Ourso. There are simply insufficient allegations to overcome the affirmative defense of qualified immunity regarding his false arrest/imprisonment. However, as conceded by the officers, the claims of excessive force regarding the force used to restrain Ourso remain before the Court. Accordingly, Plaintiff's Section 1983 false arrest/imprisonment claims asserted under the Fourth Amendment are dismissed with prejudice.

5. <u>Fourteenth Amendment Due Process Claim</u>

The Fourteenth Amendment prohibits state actors from depriving individuals of "life, liberty, or property, without due process of law."[99] Plaintiff's Fourteenth Amendment due process claim fits within this portion of the Fourteenth Amendment. Arrestees and pretrial detainees have a Fourteenth Amendment due process right to "be secure in [their] basic human needs, such as medical care and safety."[100] This includes the right to be free of excessive force and to be provided medical care.[101] Regarding the use of force, a violation occurs when the force is used "maliciously and sadistically for the very purpose

---

[98] The Court is not suggesting that Ourso was committing any of these offenses but simply pointing to potential violations of law the officers may have reasonably concluded based on Ourso's conduct when they arrived on the scene.

[99] U.S. Const. amend. XIV.

[100] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 647–48 (5th Cir.1996); *see also United States v. Gonzales*, 436 F.3d 560, 573 (5th Cir. 2006).

[101] *Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 477 (5th Cir.2014) (discussing a Fourteenth Amendment claim of excessive force); *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000) (discussing a Fourteenth Amendment claim of failure to provide medical care).

56952

of causing harm to the pretrial detainee, rather than in a good faith effort to maintain or restore discipline."[102]

Plaintiff has clearly alleged excessive force against Ourso that resulted in his death – thus the deprivation of his life – without due process of law. As this claim is entirely intertwined with the excessive force claim not the subject of dismissal on this motion, the Court will deny the officers' motion to dismiss Plaintiff's Fourteenth Amendment due process claim.

### 6. State Law Claims Against the Officers

Plaintiff asserted several Louisiana constitutional and state law claims against the officers in this case. However, Plaintiff utterly failed to mention any of the state law claims in her *Opposition* memoranda. Accordingly, the state law claims are deemed abandoned, the officers' *Motion to Dismiss* is granted on all state law claims, and the state law claims asserted against the individual officers in this case are dismissed with prejudice.

## IV. AMENDMENT

While the Federal Rules of Civil Procedure provide that "leave to amend shall be freely given when justice so requires,"[103] and "courts should ordinarily grant a plaintiff **at least one** opportunity to amend before dismissing a complaint with prejudice for failure to state a claim,[104] the Court finds that Plaintiff has had ample opportunity to cure the deficiencies raised in the previous *Motions to Dismiss*, and the filing of a **fourth** complaint

---

[102] *Kitchen*, 759 F.3d at 477 (quoting United States v. Daniels, 281 F.3d 168, 179 n. 10 (5th Cir.2002), and Valencia v. Wiggins, 981 F.2d 1440, 1446 (5th Cir.1993)) (internal quotations marks omitted).
[103] Fed. R. Civ. P. 15(a)(2).
[104] *Matthews v. Stolier*, No. 13-6638, 2014 WL 5214738 at *12 (E.D. La. Oct. 14, 2014)(citing *Hart v. Bayer Corp.,* 199 F.3d 239, 247 n.6 (5th Cir. 2000))(emphasis added).
56952

is not likely to cure the repeated deficiencies.  Further, where the Court has found that amendment is futile, or Plaintiff abandoned claims, the Court does not allow amendment.

## V.    CONCLUSION

For the reasons set forth above, the *Motion to Dismiss Second Supplemental and Amended Complaint*[105] by Defendants, City of Plaquemine and Kenny Payne, Chief of Plaquemine Police is hereby GRANTED.  Plaintiff's claims against Chief Payne and the City of Plaquemine are dismissed with prejudice.  The *Motion to Dismiss Second Supplemental and Amended Complaint*[106] filed by the individual officers is GRANTED in part and DENIED in part.  The Court denies the officers' motion to dismiss Plaintiff's Fourteenth Amendment due process claim as the Court finds it is connected to the Eighth, Fourth, and Fourteenth Amendment excessive force claims.  All other claims asserted against the officers are dismissed with prejudice.

**IT IS SO ORDERED**.

Signed in Baton Rouge, Louisiana on <u>September 20, 2019</u>.


_Shelly D. Dick_
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[105] Rec. Doc. No. 39.
[106] Rec. Doc. No. 40.
56952